## THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LAMARR MAXEY,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:23-cv-03491-GCS** |
| **WEXFORD HEALTH SOURCES, INC., ALFONSO DAVID, DR. BURRELL(or his estate), WARDEN DANIEL MONTI, and R. HUGHES,** | |
| **Defendants.** | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff LaMarr Maxey, a former inmate of the Illinois Department of Corrections ("IDOC"), who at the time he filed his Complaint was incarcerated at Shawnee Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges the defendants were deliberately indifferent to his need for hip surgery in violation of the Eighth Amendment. He also alleges that he was denied a filling for his tooth in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen

---

[1] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 8), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court, the IDOC, and Wexford Health Sources, Inc.

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

In his Complaint, Plaintiff alleges he entered the IDOC in January 2013 and shortly thereafter was diagnosed with advanced degenerative joint disease in his left hip. (Doc. 1, p. 13). From March 6, 2013, until December 6, 2017, Plaintiff was housed at Western Illinois Correction Center ("Western Illinois") and received only ibuprofen for his hip pain. *Id*. at p. 13-15. On December 6, 2017, he was transferred to Shawnee Correctional Center and came under the care of Dr. Alfonso David. *Id*. He informed Dr. David on numerous occasions that he still suffered from joint pain and stomach pain from the continued use of ibuprofen during his incarceration at Western Illinois. *Id*. at p. 15. Dr. David informed Plaintiff that he would see him every six months for his hip pain, but at every appointment he merely continued with the same course of treatment previously prescribed. Thus, according to Plaintiff, his hip continued to deteriorate, he received only ibuprofen for the pain, and his stomach issues continued to worsen due to the overuse of ibuprofen. *Id*. at p. 16-17.

By 2020, Plaintiff alleges that his condition had deteriorated to a point where he was "barely walk[ing] without stumbling." (Doc. 1, p. 16). He informed Dr. David of his condition and requested to see an orthopedic doctor about a hip replacement, but Dr. David told Plaintiff he would have to wait until his release to obtain private insurance.

*Id*. On October 23, 2020, Plaintiff fell in the shower due to his hip giving out. *Id*. at p. 17. He wrote a grievance requesting a hip replacement. The grievance response indicated that Dr. David had been consulted and informed grievance officials that Plaintiff was not a candidate for hip replacement. *Id*. at p. 5, 7-8, 17.

Plaintiff also alleges that prior to filing a grievance he spoke to his correctional counselor R. Hughes and Warden Daniel Monti about his hip pain. (Doc. 1, p. 18). He informed both that he had never received any care other than ibuprofen (which upset his stomach), had never seen an orthopedic surgeon for consultation, and had never received assistive devices such as a cane or walker. *Id*. Both officials deferred to Dr. David's recommendations and stated that Plaintiff was being treated by Dr. David. They later denied his grievances. *Id*. at p. 18-19.

On March 14, 2022, Dr. David finally agreed to refer Plaintiff to collegial review for an orthopedic consultation. (Doc. 1, p. 19). On May 5, 2022, Plaintiff saw orthopedic surgeon Roland S. Barr who diagnosed him with a degenerative hip that was "bone on bone." *Id*. Dr. Barr recommended a total hip replacement, despite Dr. David previously stating that Plaintiff was not a candidate for replacement. *Id*. On July 6, 2022, Plaintiff had total hip replacement surgery to repair his hip. *Id*. at p. 19-20.

Upon Plaintiff's return to Shawnee, Dr. David refused to honor the surgeon's order for physical therapy. As a result, Plaintiff alleges that his recuperation has been delayed due to lack of physical therapy. (Doc. 1, p. 19-20). He further alleges that the delay in referral to an orthopedic doctor caused him pain and caused his condition to deteriorate. *Id*. at p. 20. He also alleges that the delay in referral to an orthopedic doctor was due to

Wexford Health Sources, Inc.'s cost saving policy which limits quality of care provided to inmates. *Id.*

In addition to the issues with his hip, Plaintiff additionally alleges that he suffered from delays in his dental care while at Shawnee Correctional Center. (Doc. 1, p. 20). On October 21, 2021, Plaintiff saw the dentist, Dr. Burrell, after a 46-day wait for a dental appointment. *Id.* Plaintiff showed Dr. Burrell a missing filling. *Id.* Dr. Burrell stated that he could not fill the tooth at that appointment but would add him to a waiting list for fillings. *Id.* Plaintiff alleges that he saw Dr. Burrell at least five times during 2022, but Dr. Burrell refused to fill the tooth. Instead, he informed Plaintiff that the appointments were for fittings for a partial and that he was not doing fillings at that time. *Id.* Plaintiff notes that Dr. Burrell is now deceased, and he never filled his tooth. *Id.* at p. 21.

On December 15, 2022, Plaintiff met with a dental hygienist for a teeth cleaning, and she informed Plaintiff that there was no full-time dentist on staff at Shawnee since the passing of Dr. Burrell. She could not provide him with pain medication for the tooth with the missing filling nor did she know when he would get his filling. (Doc. 1, p. 21). Plaintiff was not able to receive a filling for his tooth until March 26, 2023, when a "traveling dentist" visited Shawnee. *Id.* Plaintiff alleges that Dr. Burrell, prior to his death, delayed his filling despite Plaintiff experiencing continued pain. He also alleges that the delay in dental care was caused by a policy or practice of Wexford of refusing to employ a full-time dentist at Shawnee. *Id.*

DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** **Eighth Amendment deliberate indifference claim against Dr. Alfonso David, Daniel Monti, and R. Hughes for delaying Maxey's referral to an orthopedic surgeon for hip surgery.**
>
> **Count 2:** **Eighth Amendment claim against Wexford Health Sources, Inc. for having a cost-saving policy which prevented Maxey from obtaining care for his hip.**
>
> **Count 3:** **Eighth Amendment deliberate indifference claim against Dr. Burrell for the delay in filling Maxey's tooth.**
>
> **Count 4:** **Eighth Amendment claim against Wexford Health Sources, Inc. for having a policy or practice of failing to staff a full-time dentist at Shawnee Correctional Center.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

*Count 1*

At this stage, Plaintiff states a claim for deliberate indifference against Dr. David for the delay in the treatment of his deteriorating hip. Plaintiff adequately alleges that he

---

[2]    *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

informed Dr. David of his deteriorating condition, and Dr. David merely continued with a course of ineffective treatment. Dr. David informed Plaintiff that he was not a candidate for hip replacement and merely provided him with ibuprofen. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment). He also alleges that he specifically spoke to Daniel Monti and R. Hughes about his lack of adequate care from Dr. David, and they simply referred him back to Dr. David. That is enough to state a claim against these individuals at this stage.

*Count 2*

Plaintiff fails, however, to state a claim against Wexford. He alleges that he constantly informed the "Wexford doctors" of his condition and was told he was not a candidate for hip surgery and alleges that both Wexford and Dr. David denied his surgeon's order for physical therapy. Wexford, however, cannot be liable for the actions of its employees because *respondeat superior*, *i.e.*, supervisor liability, does not apply to Section 1983 actions. Plaintiff can only proceed on a claim against Wexford if he alleges that he was denied care because of Wexford's policies or practices. *See, e.g., Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (noting that corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation). Although Plaintiff alleges that Wexford has a policy or practice of elevating concerns of cost over quality care, he states so only in conclusory fashion. He fails to allege how these cost concerns led to the delay in care. In fact, his Complaint alleges that Dr. David said that that he was not a candidate for hip surgery. Plaintiff does

not allege, for example, that Dr. David indicated that he was denying care due to the possible cost of surgery. Thus, Plaintiff fails to state a claim against Wexford.

*Severance of Counts 3 and 4*

Plaintiff's claims in Counts 3 and 4 for Dr. Burrell's delay in treating his tooth pain and Wexford's failure to maintain a full-time dentist at Shawnee are unrelated to his claim in Count 1 regarding his hip. Accordingly, consistent with *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) and Federal Rules of Civil Procedure 18 and 20, the Court will sever Counts 3-4 into a separate case and will open a new case with a different case number.

## PENDING MOTIONS

As to Plaintiff's motion for counsel (Doc. 3), he states that he has written several law firms. He also states that he is unsophisticated in the law and unfamiliar with court procedures. But given the early stage of the litigation, it is difficult to accurately evaluate the need for the assistance of counsel. *See, e.g.*, *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) (stating that "until the defendants respond to the complaint, the plaintiff's need for assistance of counsel . . . cannot be gauged.").[3] Further, counsel is not needed at this time because defendants have not filed an Answer nor is there anything pending that would require the assistance of counsel. Thus, his motion for counsel (Doc. 3) is **DENIED**. Plaintiff may renew his request for counsel at a later date.

---

[3]     In evaluating the motion for counsel, the Court applied the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

DISPOSITION

For the reasons stated above, Counts 3-4 are severed into a new case against Dr. Burrell (or his estate) and Wexford Health Sources, Inc. In the new case, the Clerk of Court is **DIRECTED** to file the following documents:

- This Memorandum and Order;

- The Complaint (Doc 1); and the

- The motion to proceed *in forma pauperis* (Doc. 2).

The only remaining claims in this case are Counts 1-2. Count 1 shall proceed against Dr. Alfonso David, Daniel Monti, and R. Hughes, but Count 2 against Wexford Health Sources, Inc. is **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Dr. Alfonso David, Daniel Monti, and R. Hughes: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending

the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED:  February 2, 2024.**

Digitally signed by
Judge Sison
Date: 2024.02.02
14:34:14 -06'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**